U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN - 8 2020
AT____ O'CLOCK____
John M. Domurad, Clerk - Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of a petition to perpetuate testimony by WASTE STREAM, INC. PRP GROUP | **VERIFIED PETITION TO PERPETUATE TESTIMONY**<br><br>5:20-MC-043 (GTS/TWD) |

1.  Waste Stream, Inc. PRP Group ("Petitioner") by and through its attorneys, hereby petitions this Court for an order pursuant to Rule 27 of the Federal Rules of Civil Procedure authorizing Petitioner to depose Chester Bisnett, Sr., Harold Villnave, Jr., and Chester ("Skip") Bisnett in order to perpetuate their testimony.

### THE PARTIES

2.  Petitioner is an administrative trust, presently consisting of Waste Stream, Inc. ("WSI"), Niagara Mohawk Power Corporation ("Niagara Mohawk"), Alcoa Corporation ("Alcoa"), and Reynolds Metals Company, LLC ("Reynolds Metals").

3.  WSI is a New York corporation and wholly-owned subsidiary of Casella Waste Systems, Inc., a Delaware corporation with a principal place of business at 25 Greens Hill Lane, Rutland, Vermont.

4.  Niagara Mohawk is a New York public utility corporation with a principal place of business at 300 Erie Boulevard West, Syracuse, New York.

5.  Alcoa is a Delaware corporation with a principal place of business at 201 Isabella Street, Suite 500, Pittsburgh, Pennsylvania 15212-5858.

6.  Reynolds Metals is a limited liability company with a principal place of business at 201 Isabella Street, Suite 500, Pittsburgh, Pennsylvania 15212-5858.

7. Reynolds Metals is a wholly-owned subsidiary of Alcoa.

8. WSI, Niagara Mohawk, Alcoa and Reynolds Metals are all potential adverse parties as potentially responsible parties ("PRPs") for the Waste Stream, Inc. Site in Potsdam, New York ("Site").

## JURISDICTION AND VENUE

9. The Northern District of New York is the proper venue pursuant to Rule 27(a)(1) of the Federal Rules of Civil Procedure because the Site at issue is located within the District and at least one potentially adverse party resides in the District. In addition, upon information and belief, all proposed deponents reside in the District.

## FACTS

### *The Site and Chet Bisnett, Inc.*

10. Petitioner was formed for the purpose of investigating the existence of and remediating hazardous substances at the Site.

11. The Site consists of approximately 29.2 acres located at 147 Maple Street (New York State Route 11) in the Town and Village of Potsdam, St. Lawrence County, New York, owned by WSI (the "WSI property"), as well as areas immediately adjacent to the WSI Property, wetlands to the northeast of the WSI Property (the "Northern Drainage Area" or "NDA"), and a drainage swale in the southern portion of the WSI Property that conveys runoff to the NDA (the "Southern Drainage Area" or "SDA").

12. Beginning in approximately 1957, Chester Bisnett, Sr. owned and operated the Site as a metal recycling and scrap yard; the operating name was later changed to Chet Bisnett Inc. ("CBI").

13. CBI's metal recycling and scrap operations expanded north from the southern portion of the WSI property beginning in the mid-1960s and included tin press operations, metal shearing, car crushing, and scrap metal processing.

14. CBI purchased and scrapped, among other things, transformers, circuit breakers, condensers, wires, lead-acid batteries, vehicles, miscellaneous metal scrap, and other equipment, all of which was processed at the WSI Property.

15. CBI's handling, cutting, and processing of scrap materials and equipment resulted in the release of hazardous substances, including Polychlorinated Biphenyls ("PCBs"), volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), and metals, which are present at the Site.

16. In 1987, CBI merged with B&L Carting to become Waste Stream Management Inc., which was later renamed Waste Stream, Inc.

17. WSI became a wholly-owned subsidiary of Casella Waste Systems, Inc. in 1998.

*Investigation and remediation of the Site*

18. The Site is listed by the New York State Department of Environmental Conservation ("NYSDEC") as a Class 2 site in the Registry of Inactive Hazardous Waste Disposal Sites in New York (Site Number 6-45-022) pursuant to Environmental Conservation Law ("ECL") § 27-1305, due to the presence of PCBs, VOCs, SVOCs, and metals.

19. Site investigations and remedial activities have been ongoing at the Site since the late 1980s.

20. On April 30, 1990, WSI, General Motors ("GM"), and Mineral Processing Corporation (now defunct) entered into an Order on Consent, dated April 30, 1992 (A6-0222-09-

3

02) with the NYSDEC, which required the investigation and remediation of PCB-contaminated soils at the Site.

21.     On December 20, 2000, WSI, Niagara Mohawk and GM entered into an Order on Consent (A6-0399-9911) with the NYSDEC pursuant to Article 27 of the ECL ("2000 Order").

22.     The 2000 Order required the performance of the Focused RI/FS and payment of state costs and specifically reserved NYSDEC's civil, criminal, and administrative rights and authorities.

23.     The final Focused RI report was completed on October 31, 2003.

24.     A supplemental RI was prepared in March 2006.

25.     The NYSDEC approved the final FS on July 3, 2009.

26.     The Focused RI identified PCBs, VOCs, SVOCs, and metals in surface and subsurface soils, groundwater and surface water on the Site, including the SDA, as well as the NDA and other areas immediately adjacent to the WSI Property.

27.     On June 15, 2011, the NYSDEC issued the final Record of Decision ("ROD") for the Site.

28.     The selected remedy in the ROD includes, among other things, the excavation and onsite consolidation of approximately 26,300 cubic yards of contaminated soils and sediments, the excavation and offsite disposal of approximately 10,300 cubic yards of contaminated soils and sediments, construction of a soil cover, and restoration.

29.     On October 15, 2013, WSI and Niagara Mohawk entered into an Order on Consent and Administrative Settlement (A6-0798-12-0) pursuant to Article 27 of the ECL ("2013 Order") for the design and implementation of the remedy for the Site.

30. The 2013 Order resolved WSI and Niagara Mohawk's liability to the State, including liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9607, 9613 ("CERCLA"), pursuant to 6 NYCRR Part 375-1.5(b)(5) for the matters addressed in the Order.

31. A revised Remedial Design/Remedial Action Work Plan was submitted in April 2014.

32. On March 21, 2016, Alcoa Inc. and Reynolds Metals were added as Respondents to the 2013 Order.

33. A final 100% Remedial Design Report, dated August 2018, was approved by NYSDEC on March 6, 2019.

34. In May 2019, Petitioner began its cleanup activities at the Site with NYSDEC's oversight.

35. The goal of the remediation is to achieve cleanup levels that protect public health and the environment.

### *Petitioner's Efforts to Investigate and Remediate the Site and Develop a Final Allocation*

36. On January 11, 2000, WSI, GM, Niagara Mohawk, Reynolds Metals, and Alcoa formed the WSI PRP Group and entered into a Cost Sharing Agreement to fund the Focused Remedial Investigation ("RI") and Feasibility Study ("FS") for the Site, based on a non-final allocated share.

37. The Cost Sharing Agreement included a tolling agreement to allow the parties to work cooperatively to clean-up the site, investigate other PRPs and determine allocation.

38. The Cost Sharing Agreement was subsequently supplemented and amended in 2002 and 2004 by WSI, GM, Niagara Mohawk, and Alcoa to provide additional funds for the Focused RI/FS.

39. In 2009, GM declared Chapter 11 bankruptcy, which created an orphan share of the funding for the investigation and remediation of the Site.

40. In 2013, WSI and Niagara Mohawk entered into a revised Cost Sharing Agreement to fund the further investigation, remediation, and monitoring of the Site required by the ROD and 2013 Order. Alcoa and Reynolds Metals had withdrawn from the PRP Group at this time.

41. Alcoa and Reynolds Metals rejoined the PRP Group and, on January 29, 2016, WSI, Niagara Mohawk, Alcoa, and Reynolds Metals entered into an Amended Cost-Sharing Agreement ("2016 CSA") to share the costs necessary to promote the prompt, efficient, and cost effective implementation of the work under the 2013 Order and agreed to develop a final allocation by sharing information and engaging consultants, contractors, and vendors to carry out the work.

42. The parties to the 2016 CSA agreed to conduct a final allocation process within sixty days of the completion of the construction of the remedial action.

43. On April 18, 2017, WSI, Niagara Mohawk, Alcoa, and Reynolds Metals entered into an Amendment to the 2016 CSA authorizing FTI Consulting ("FTI") to, *inter alia*, locate potential witnesses and PRPs, develop a witness list, conduct corporate succession and viability research, and conduct witness screening interviews.

*FTI's Investigation*

44. Petitioner retained FTI to review and analyze site records and technical reports, conduct corporate and financial research of PRPs, conduct witness interviews, and supplement research and nexus development.

45. FTI reviewed a partial ledger of scrap purchases kept by CBI to identify entities that conveyed scrap to the Site for further investigation and identification of witnesses.

46. In 2013 and 2014, FTI conducted interviews with Harold Villnave, Jr. and Skip Bisnett, former employees of CBI, who described CBI's operations and identified certain entities that sold scrap materials and equipment to CBI.

47. FTI reviewed government records, city and industrial directories, newspapers, Sanborn maps, aerial photography, and industry-specific literature and reports (*e.g.* Moody's manuals, annual reports) for additional information regarding the entities identified by Skip Bisnett and Mr. Villnave and in the ledger.

48. Based on witness interviews and its review of the records, FTI has developed a list of potential witnesses using the Massena City Directories, which is in the process of being narrowed based on the likelihood of the witness to have relevant knowledge of the Site, the Social Security Death Index, and additional research of the witness' location and contact information.

49. FTI's review to date has identified other PRPs that arranged for the disposal of scrap materials and equipment at the Site, including but not limited to New York Telephone Company, Nekoosa-Edwards Paper Company, St. Joe Minerals, and Drummond McCall.

## DEPOSITIONS TO PERPETUATE TESTIMONY

50. Petitioner (or one or more of its members) expects be a party in a future action brought to recover and allocate the investigation and remediation costs for the Site.

51. Remedial activities are anticipated to be completed this year at an estimated cost of $9,500,000, as well as other associated costs and expenses incurred to fully remediate the Site.

52. The millions of dollars that have or will be spent are attributable to the disposal and release of hazardous substances by CBI from scrap materials and equipment that various entities arranged to be disposed of at the Site.

53.     Petitioner expects that a future action will be brought for the recovery of past and future response costs pursuant to Sections 107 and 113 of CERCLA, as well as claims in negligence, indemnity, and contribution, for the causes and remediation of hazardous substances at the Site.

54.     Although Petitioner has identified PRPs, Petitioner anticipates that additional witnesses identified or as-yet-to-be identified by FTI will provide information relevant to the development of a final allocation among WSI, Niagara Mohawk, Alcoa, Reynolds Metals, and any other party or parties identified as having a nexus to the Site. The Site remediation and FTI's work, however, are ongoing.

55.     In the interim, Petitioner seeks to memorialize and preserve testimony of essential factual information relevant to the expected future litigation that may otherwise be lost.

***Chester Bisnett, Sr.***

56.     Chester Bisnett, Sr. is the former owner of CBI. Upon information and belief, Chester Bisnett, Sr. currently resides in Norwood, New York.

57.     Chester Bisnett, as the former owner of CBI, has personal knowledge of the aforementioned facts, including without limitation, the source, nature, and extent of scrap metal purchased, processed, and scrapped by CBI, and the resulting release of hazardous substances at the Site.

58.     Chester Bisnett's testimony would be integral to any fact development and calculation of damages, as well as the development of a final allocation, in expected future litigation arising from past, present, and expected future investigation and remediation of the Site.

59.     However, upon information and belief, Mr. Bisnett is refusing to cooperate and provide testimony.

60. Additionally, upon information and belief, Chester Bisnett is 91 years old and may be in failing health. His memory is also likely fading given the length of time since his time at CBI and the timeframe relevant to Site contamination, which occurred more than four decades ago.

61. Due to these factors, it is vital that the Court authorize Petitioner to depose Chester Bisnett immediately and perpetuate his testimony.

62. Any delay in deposing Chester Bisnett could result in the loss of accurate facts, accurate damage calculations, names of adverse parties, and other information relevant to the expected litigation and a final allocation of costs.

*Harold Villnave, Jr.*

63. Harold Villnave, Jr. was an employee of both CBI and WSI from approximately 1972 to 1995, and was initially employed as an outside laborer. Later in his employment, his duties involved running the scales and handling the sale and purchase of scrap from both industrial and drive-up customers.

64. Harold Villnave, Jr. currently resides at 46 Grantville Road, Raymondville, New York 13678.

65. Based on his previous employment, Harold Villnave, Jr. has extensive knowledge of the facts of this case, including without limitation the following: the equipment used by his employers; the scrap metal transactions completed; his employers' operations, including payroll and accounting; and his employers' customers.

66. Indeed, Harold Villnave, Jr. was previously interviewed about the Site in 2013 and 2014, during which he explained the weighing and processing of scrap materials and equipment, the types and nature of scrap that was processed at the Site, the meanings of terms used in the

9

ledger, sources of scrap material and equipment, and the quantity and frequency at which scrap material and equipment was acquired from various sources.

67. Harold Villnave, Jr.'s testimony would be integral to any fact development and calculation of damages, as well as the development of a final allocation, in expected future litigation arising from past, present, and expected future investigation and remediation of the Site.

68. However, upon information and belief, Mr. Villnave is refusing to cooperate and provide testimony.

69. Additionally, Mr. Villnave, was in his 70s in 2013, and upon information and belief, his health is failing.

70. His memory is also likely fading given the length of time since his employment at CBI and the timeframe relevant to Site contamination, which occurred more than four decades ago.

71. Due to these factors, it is vital that the Court authorize Petitioner to depose him immediately and perpetuate said testimony.

72. Any delay in deposing Mr. Villnave could result in the loss of accurate facts, accurate damage calculations, names of adverse parties, and other information relevant to the expected litigation and a final allocation of costs.

*Chester "Skip" Bisnett*

73. Skip Bisnett is a former employee of CBI and is currently employed by WSI. Mr. Bisnett currently resides at 5584 State Highway 56, Potsdam, New York 13676.

74. Mr. Bisnett has personal knowledge of the aforementioned facts, including without limitation, the source, nature, and extent of scrap metal purchased, processed, and scrapped by his employers, and the resulting release of hazardous substances at the Site.

75. Indeed, Mr. Bisnett was previously interviewed about the Site in 2013, during which he reported that during his time working as a scrap purchaser, CBI brought in a variety of types of scrap material and equipment from different sources.

76. Mr. Bisnett's testimony would be integral to any fact development and calculation of damages, as well as the development of a final allocation, in expected future litigation arising from past, present, and expected future investigation and remediation of the Site.

77. His memory is likely fading given the length of time since his employment at CBI and the timeframe relevant to Site contamination, which occurred more than four decades ago.

78. Due to these factors, it is vital that the Court authorize Petitioner to depose Skip Bisnett and perpetuate his testimony.

79. Any delay in deposing Skip Bisnett could result in the loss of accurate facts, accurate damage calculations, names of adverse parties, and other information relevant to the expected litigation and a final allocation of costs.

### *Timing of Depositions*

80. As set forth above, Petitioner seeks the Court's permission to move forward with the proposed depositions as soon as possible. However, Petitioner is cognizant of the current COVID-19 pandemic and social distancing measures required to reduce the spread of the virus and protect our vulnerable population.

81. Accordingly, given the age of the proposed deponents, during the pendency of the COVID-19 crisis, to the extent authorized by the Court, the requested depositions will be conducted in a way to minimize any risk to the deponents, including conducting these depositions remotely using necessary and available video technology, and in such circumstances, agree that the court reporter may administer and accept oaths remotely.

**WHEREFORE**, Petitioner asks that the Court to enter an order authorizing Petitioner to depose Chester Bisnett, Sr., Harold Villnave, Jr., and Skip Bisnett and other witnesses determined by Petitioner to have potentially relevant information that may be lost in order to perpetuate their testimony.

**DATED:** June 8, 2020

**BARCLAY DAMON LLP**

By: ___s/ *Yvonne E. Hennessey*___
 Yvonne E. Hennessey

Yvonne E. Hennessey
J.J. Pelligra

*Attorneys for Petitioner*
Office and Post Office Address
80 State Street
Albany, New York 12207
Telephone: (518) 429-4293
Facsimile: (518) 427-3472
Email: yhennessey@barclaydamon.com