UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IN RE PETITION TO PERPETUATE TESTIMONY					5:20-MC-0043 (GTS/TWD)
BY WASTE STREAM, INC., PRP GROUP

_____

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court in the above-captioned action is the Petition of Waste Stream, Inc. PRP Group ("Petitioner") to Perpetuate Testimony of Chester Bisnett, Sr., Harold Villnave, Jr., and Chester ("Skip") Bisnett pursuant to Fed. R. Civ. P. 27(a)(1). (Dkt. No. 1.)  For the reasons set forth below, the Petition shall be denied and dismissed unless, within thirty days of the date of this Decision and Order, Petitioner corrects the pleading deficiencies identified in this Decision and Order.

**I.   RELEVANT BACKGROUND**

Petitioner is an administrative trust formed on January 11, 2000, and currently consists of three corporations and one limited liability company, all of whom are responsible in some way for pollution of a 29.2-acre site in Potsdam, New York ("the Site").  Petitioner was formed for the purpose of investigating the existence of and remediating hazardous substances at the Site because the government intervened in the late 1980s and ordered the extensive cleanup and restoration of the Site by Petitioner.  In May 2019, Petitioner began its cleanup of the Site after decades of planning and negotiating with both the government and the individual members of Petitioner.

Petitioner anticipates that future litigation will arise under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") stemming from Petitioner (or one or more of its members) attempting to recover or allocate the investigation and remediation costs for the Site. Remedial activities are underway at the Site and expected to be completed sometime in 2020.

Petitioner is seeking to depose 91-year-old Chester Bisnett, Sr., who is the former owner of Chet Bisnett Inc. ("CBI"), in order to preserve his testimony for the anticipated future litigation. CBI was the company that owned and operated the Site as a metal recycling and scrap yard from 1957 onward. In 1987, CBI merged with B&L Carting to become Waste Stream Inc. ("WSI"). WSI is now a member of Petitioner. Petitioner asserts that Chester Bisnett, Sr. has relevant information about pollution at the Site. Chester Bisnett, Sr. is not cooperating and refuses to give any information at this time.

Petitioner is also seeking to depose Harold Villnave, Jr., who is a former employee of both CBI and WSI from approximately 1972 to 1975. Petitioner asserts that Villnave, Jr.'s duties involved handling the sale and purchase of scrap from both industrial and drive-up customers at the Site. Petitioner also asserts that Villnave Jr. has extensive knowledge of the facts of this case, but he is refusing to cooperate and provide testimony. Villnave, Jr. was in his 70s in 2013. He was previously interviewed about the Site in 2013 and 2014.

Petitioner is also seeking to depose Chester "Skip" Bisnett. Bisnett is a former employee of CBI and is currently employed by WSI. Petitioner asserts that Skip Bisnett has personal knowledge relevant to the facts of this case. Bisnett was previously interviewed about the Site in 2013.

**II.     GOVERNING LEGAL STANDARD AND PROCEDURES**

Federal Rule of Civil Procedure 27 enables a prospective plaintiff or a prospective defendant to depose a person before the start of a lawsuit by obtaining a court order authorizing the deposition.  After the deposition, the testimony is "thereby . . . preserved or perpetuated and, if necessary . . .  available for use in [a] future legal proceeding.  *In re Hopson Marine Transp.*, 168 F.R.D. 560, 564 (E.D. La. 1996).  The rule is employed in "situations where, for one reason or another, testimony might be lost to [a] prospective litigant unless taken immediately" without waiting until after the commencement of an expected lawsuit.  *Petition of Ferkauf*, 3 F.R.D. 89, 91 (S.D.N.Y. 1943).

A proper proceeding under Fed. R. Civ. P. 27 begins with a verified petition, and a showing "that in the contemplated action, for which the testimony is being perpetuated, federal jurisdiction would exist and thus is a matter that may be cognizable in the federal courts." *Arizona v. California*, 292 U.S. 341, 347.  The verified petition must show five facts to the satisfaction of the judge: (1) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought; (2) the subject matter of the expected action and the petitioner's interest; (3) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it; (4) the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and (5) the name, address, and expected substance of the testimony of each deponent.  Fed. R. Civ. P. 27(a)(1).

Based on these five facts, courts within the Second Circuit have recognized three elements that must be established for such a petition to succeed: (1) a focused explanation of what the petitioner anticipates any testimony would demonstrate, and a persuasive explanation of

3

why the testimony will not be used to discover evidence for the purpose of filing a complaint; (2) a good-faith expectation that the petitioner will be a party to an action cognizable in a United States court, but that it cannot currently bring the action or cause the action to be brought; and (3) an objective showing that, without a Rule 27 order, known testimony would otherwise be lost, concealed or destroyed. *See, e.g., In the Matter of Petition of Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. 2005).

The judge who decides the petition has considerable discretion, which "encompasses the nature and quality of evidence required to make or rebut the required showing." *In re Bay County Middlegrounds Landfill Site*, 171 F.3d 1044, 1046 (6th Cir. 1999). Some courts decide to hold a hearing on the matter to further flesh out the facts in the verified petition. *See, e.g., In re Town of Amenia*, 200 F.R.D. 200 (S.D.N.Y. 2001). Most courts, however, grant or deny the motion after considering only the verified petition.

If a court is satisfied that a deposition to perpetuate testimony is warranted in the circumstances, then the court should stipulate the parameters and details of the deposition and authorize it. Fed. R. Civ. P. 27. An order granting or denying a motion to perpetuate testimony is appealable as a final order. *Mosseller v. United States*, 158 F.2d 380, 383 (2d Cir. 1946).

Because of the importance of the three elements described earlier, the Court finds that a further discussion of those elements is useful.

 **A. Element 1**

The first element requires the petitioner to "furnish a focused explanation of what [it] anticipate[s] any testimony would demonstrate [and such] testimony cannot be used to discover evidence for the purpose of filing a complaint." *In re Yamaha Motor Corp.*, 251 F.R.D. 97, 99 (N.D.N.Y. 2008) (Treece, M.J.) (quoting *In re Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. 2005).

"[T]he Petitioner must know the substance of the testimony to be preserved before it can call for a Rule 27 deposition." *In re Yamaha Motor Corp.*, 251 F.R.D. at 100. One of the purposes of this element is to help prevent the use of Fed. R. Civ. P. 27 as a means of discovery to enable a prospective plaintiff to draw a complaint, which would be an abuse of the rule. *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 55 (9th Cir. 1961); *see also In re Yamaha Motor Corp.*, 251 F.R.D. at 100 (N.D.N.Y. 2008) ("[T]he need to preserve highly relevant information does not outweigh the need to discourage an obvious quest to see if a cause of action exists.").

Thus, the first element is not established where the petition does not "even . . . hint as to what the content of such a deposition would disclose other than the possible observations made by [the witness]." *In re Yamaha Motor Corp.*, 251 F.R.D. at 100. In *Yamaha*, an accident occurred involving an off-road recreational vehicle distributed by the petitioner corporation. *Id*. A police officer responded to the scene of the accident, and the petitioner corporation wanted to depose the police officer to prepare for an expected lawsuit that would be filed by the injured driver of the off-road recreational vehicle. *Id*. Magistrate Judge Randolf Treece (of this Court) decided that the petition lacked "a recitation of the precise testimony to be preserved." *Id*. at 100. ("There isn't even a hint as to what the content of such a deposition would disclose other than the possible observations made by [the police officer].").

However, the first element would be established where the petition shows that the petitioner already possesses the desired information in a general form and is merely seeking it in a more-detailed form. *In re Application of Liquor Salesmen's Union Local 2D Pension Fund*, 12-CV-2786, 2012 WL 2952391, at *2-3 (E.D.N.Y. July 12, 2012). In *Liquor Salesmen's Union*, the petitioner was an employee benefit plan which expected to be a plaintiff to an action against the unidentified holders of a bank account under the Employee Retirement Income Security Act

5

of 1974 for the "wrongful (possibly fraudulent) deposit and retention of its funds" into the bank account. *Liquor Salesmen's Union*, 2012 WL 2952391, at *2. The petitioner sought the account holders' identities and account information to "complete its investigation of its ERISA claims by properly identifying potential defendants, and to support its claim of wrongful (and possibly fraudulent) conduct by those defendants. *Id*. at *3.

Similarly, the first element is established where the petition shows that the petitioners already know the identity of the potentially responsible party that they are seeking to elicit testimony about from the witness sought to be deposed (a truck driver). *In re Town of Amenia*, 200 F.R.D. 200, 201-02 (S.D.N.Y. 2001).

**B.     Element 2**

The second element requires the petitioner "to show . . . that [it] expects to be party to an action cognizable in a court of the United States, but is presently unable to bring it or cause it to be brought, and the reasons for which the petitioner seeks to perpetuate the testimony." *In re Town of Amenia*, 200 F.R.D. 200, 202 (S.D.N.Y. 2001).

This second element was satisfied when two incorporated municipalities, both of whom operated a landfill during certain time periods from 1945 to 1976, sought to take the deposition of a truck driver that petitioners alleged "had highly relevant information about the disposal of wastes at the landfill site by his own employer and others." *In re Town of Amenia*, 200 F.R.D. at at 201-202. Before filing their verified petition, the petitioners had been notified by the New York State Department of Environmental Conservation that it considered the petitioners potentially responsible parties for purposes of remediation under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). Because the

petitioners were in the process of being compelled by the government to investigate and clean up the landfill site, the Court reasoned that

> Petitioners have reasonable cause to expect to be parties to an action brought under the relevant provisions of CERCLA, and believe reasonably that the testimony they seek to perpetuate would be necessary to prevent a failure of Justice in that anticipated action, in which the identity of other potentially responsible parties and the time and nature of their use of the landfill will be highly significant evidence.

*In re Town of Amenia*, 200 F.R.D. at 202.

### C. Element 3

The third element requires the petitioner to "make an objective showing that without a Rule 27 hearing, known testimony would otherwise be lost, concealed or destroyed." *In re Yamaha Motor Corp.*, 251 F.R.D. 97, 99 (N.D.N.Y. 2008) (Treece, M.J.) (quoting *In the Matter of Petition of Allegretti*, 229 F.R.D. 93, 96 [S.D.N.Y. 2005]); *see also Jackson v. Good Shepard Services, et al.*, 683 F. Supp.2d 290, 293 (S.D.N.Y. 2009) (finding that the petitioner must show "a sufficient risk that the testimony . . . would be lost absent Rule 27 discovery").

Courts require petitioners to make "a particularized showing that intervention prior to commencement of an action is necessary to preserve the subject evidence." *In re John W. Danforth Group, Inc.*, 13-MC-33S, 2013 U.S. Dist. LEXIS 92476 at *5-6 (W.D.N.Y June 30, 2013). "Common elements satisfying this particularization requirement include geographical or jurisdictional constraints, a deponent's advanced age or illness, or actual destruction of evidence." *John W. Danforth Group*, 2013 U.S. Dist. LEXIS 92476, at *6 (internal quotation marks mitted) (citing *In re Liquor Salesmen's Union*, 12 CV-2786, 2012 U.S. Dist. LEXIS 100685 at *3 [E.D.N.Y. July 19, 2012]).

The age of the proposed deponent is often taken into account when analyzing this element.  For example, youth generally weighs against granting the petition.  *See* In re Allegretti 229 F.R.D. at 98 ("Given [the proposed deponent's] relative youth and his ties to this venue, there is little reason to believe that without a Rule 27 deposition his testimony in a future action would be lost.").  However, old age weighs in favor of granting the petition.  *See In re Town of Amenia*, 200 F.R.D. at 202-03 (finding the third element established where the proposed deponent was 77 years old and in poor health, and that it was impossible to determine when the expected litigation would actually commence).

**III.   ANALYSIS**

After carefully considering the matter, the Court finds that, although Petitioner has established the second and third elements discussed above, it has not yet sufficiently done so with regard to the first element.

With regard to the second element, Petitioner has established in good faith that it expects to be a party to an action cognizable in a United States court, but that it cannot currently bring the action or cause the action to be brought.  More specifically, Petitioner has persuaded the Court that federal litigation will most likely ensue under CERLA, to which Petitioner (and/or its components) will necessarily be a party.

With regard to the third element, Petitioner has made an objective showing that, without a Rule 27 order, known testimony would otherwise be lost, concealed or destroyed.  Chester Bisnett, Sr., is 91 years old and may be in failing health; Harold Villnave, Jr., was in his 70s in 2013, and his health appears to be failing; and Skip Bisnett appears to be in his 60s.  Thus, according to CDC guidelines, each witness is at increased risk (due to his age alone) for severe illness from COVID-19 (albeit to a lesser extent with regard to Skip Bisnett).  Moreover, this is

an unusual circumstance in which the passage of time serves as an additional reason for finding that this element has been satisfied.  Granted, the mere suggestion that a witness's memory might fade is insufficient to justify the granting of the motion.  However, here, even setting aside the advanced ages of the witnesses, the events that they would have to recall are already decades old.  The inference that memories are fading is difficult to evade.

However, with regard to the first element, several deficiencies exist.  With regard to Chester Bisnett, Sr., Petitioner asserts that his testimony would likely demonstrate "the source, nature and extent of scrap metal purchased, processed, and scrapped by CBI, and the resulting release of hazardous substances at the Site."  (Dkt. No. 1, at ¶ 57.)  Nonetheless, the fact that (unlike Harold Villnave, Jr. and Skip Bisnett) Chester Bisnett, Sr., was never interviewed about the Site in 2013 and 2014 causes the Court to infer that Petitioner does not in fact already know the substance of his testimony, even in general form, and thus that it is merely engaging in discovery to unearth evidence rather than preserve already-unearthed evidence, which is prohibited under Fed. R. Civ. P. 27.  *See, supra,* Part II.A. of this Decision and Order.[1]

With regard to Harold Villnave, Jr. (who had been interviewed in 2013 and 2014), a slight discrepancy appears to exist between the information obtained from him during his prior interview and the information sought to be obtained from him during his deposition.  (*Compare* Dkt. No. 1, at ¶ 66 ["Villnave . . . was previously interviewed about the Site in 2013 and 2014,

---

[1] *See also, e.g., Moss v. Remick*, No. 17-23, 1986 WL 10286, at *1 (S.D.N.Y. Sept. 11, 1986) ("[Rule 27] is not a method of discovery to determine whether a cause of action exists; and, if so, against whom action should be instituted."); *Shuster v. Prudential Secur., Inc.*, 91-CV-0901, 1991 WL 102500, at *1 (S.D.N.Y. June 6, 1991) ("The decisions construing Rule 27 make it clear that the purpose of the rule is to preserve and perpetuate known testimony, not to provide litigants with a vehicle for the ascertainment of evidence."); *In re Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. 2005) ("[T]estimony cannot be used to discover evidence for the purpose of filing a complaint.").

during which he explained the weighing and processing of scrap materials and equipment, the types and nature of scrap that was processed at the Site, the meaning of the terms used in the ledger, sources of scrap material and equipment, and the quantity and frequency at which scrap material and equipment was acquired from various sources."] *with* Dkt. No. 1, at ¶ 65 ["Villnave . . . has extensive knowledge about . . . the following: the equipment used by his employers; the scrap metal transactions completed; his employers' operations, including payroll and accounting; and his employers' customers."].)  This discrepancy tempts the Court to infer that Petitioner is not merely seeking details of information it has already obtained but is seeking altogether new information, which (as explained above) would be prohibited under Fed. R. Civ. P. 27. Moreover, Petitioner's assertion that it would use Villnave's testimony for "fact development and [the] calculation of damages, as well as the development of a final allocation, in expected future litigation . . ." (Dkt. No. 1, at ¶ 67) causes the Court to infer that the new details to be learned through the depositions are actually necessary to file a claim (whether through a complaint, cross-claim or counterclaim), which would also appear to be prohibited under Fed. R. Civ. P. 27.  Among other things, the Court has trouble discerning (1) whether Petitioner already possesses sufficient information to file the claims to which it is (implicitly) referring or whether it needs the sought-after information to file those claims, and (2) whether Petitioner's anticipated claims are solely against these three individuals (and/or CBI) or whether they are also against currently unidentified third-parties.

With regard to Skip Bisnett (who had been interviewed in 2013), a slight discrepancy also appears to exist between the information obtained from him during his prior interview and the information sought to be obtained from him during his deposition. (*Compare* Dkt. No. 1, at ¶ 75 ["Mr. Bisnett was previously interviewed about the Site in 2013, during which he reported

that during his time working as a scrap purchaser, CBI brought in a variety of types of scrap material and equipment from different sources."] *with* Dkt. No. 1, at ¶ 74 ["Mr. Bisnett has personal knowledge of . . . the source, nature and extent of scrap metal purchased, processed and scrapped by his employers, and the resulting release of hazardous substances as the Site."].) Again, this discrepancy tempts the Court to infer that Petitioner is not merely seeking details of information it has already obtained but is seeking altogether new information, which again would be prohibited under Fed. R. Civ. P. 27.  Moreover, Petitioner's assertion that it would use Skip Bisnett's testimony for "fact development and [the] calculation of damages, as well as the development of a final allocation, in expected future litigation . . ." (Dkt. No. 1, at ¶ 76) causes the Court to infer that the new details learned through the depositions are actually necessary to file a claim (whether through a complaint, cross-claim or counterclaim), which would also appear to be prohibited under Fed. R. Civ. P. 27.  Again, among other things, the Court has trouble discerning (1) whether Petitioner already possesses sufficient information to file the claims to which it is (implicitly) referring or whether it needs the sought-after information to file those claims, and (2) whether Petitioner's anticipated claims are solely against these three individuals (and/or CBI) or whether they are against currently unidentified third-parties.

      For all of these reasons, the Petition shall be denied and dismissed unless, within thirty days of the date of this Decision and Order, Petitioner corrects the pleading deficiencies identified in this Decision and Order.

      **ACCORDINGLY**, it is

      **ORDERED** that Petitioner's Petition (Dkt. No. 1) **shall be <u>DENIED</u> and <u>DISMISSED</u>** for the reasons stated above without further Order of this Court **unless**, **within THIRTY (30)**

**DAYS** of the date of this Decision and Order, Petitioner files an **AMENDED PETITION** that corrects the pleading deficiencies identified above in this Decision and Order.[2]

Date: July 20, 2020
      Syracuse, New York

                                                  Hon. Glenn T. Suddaby
                                                  Chief U.S. District Judge

---

[2]     Petitioner is respectfully advised that, should Petitioner file an Amended Petition before the expiration of the above-described thirty-day period, the Court would analyze that Amended Petition before the expiration of the thirty-day period.